UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| VELIA TANEFF, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CALUMET TOWNSHIP and MARY L. ELGIN, )<br>individually and in her official capacity as Trustee )<br>of Calumet Township, )<br>      Defendants. ) | CAUSE NO.: 2:07-CV-216-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Motion for Summary Judgment [DE 43] filed by Defendants Calumet Township and Mary L. Elgin on October 1, 2008, and Objections to the Admissibility of Plaintiff's Rule 56 Evidence [DE 56], which the Court construes as a Motion to Strike, filed by Defendants on November 24, 2008. For the following reasons, the Court hereby **GRANTS** the Defendants' Motion for Summary Judgment and **DENIES as moot** the Defendants' Objections to the Admissibility of Plaintiff's Rule 56 Evidence.

**PROCEDURAL BACKGROUND**

On June 28, 2007, Plaintiff Velia Taneff filed a Complaint against Calumet Township ("the Township") and Mary L. Elgin ("Elgin") (collectively, "Defendants"), alleging that Defendants violated her rights under the First and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. § 1983, by unlawful and politically motivated termination of Plaintiff's employment with Defendants.

On August 1, 2007, this case was reassigned to Magistrate Judge Paul R. Cherry. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all

further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On September 4, 2007, Defendants filed a Motion to Dismiss, which the Court denied on January 11, 2008. On February 21, 2008, Defendants filed an Answer to Plaintiff's Complaint and Affirmative Defenses.

On October 1, 2008, Defendants filed a Motion for Summary Judgment with an accompanying Brief in support. Plaintiff filed her Response brief in opposition to the Motion for Summary Judgment on October 31, 2008. On November 24, 2008, Defendants filed their Reply Brief in Support of Summary Judgment, as well as Objections to the Admissibility of Plaintiff's Rule 56 Evidence, to which Plaintiff filed no response.

## FACTS

Mary Elgin took office in January 2003 as the elected Trustee of Calumet Township in Lake County, Indiana. In January 2003, Plaintiff Velia Taneff was hired as an Administrative Clerk with the Calumet Township Trustee's Office. On September 8, 2005, Plaintiff received Calumet Township's Employee Handbook which provided that the Township reserved the right to terminate employment at any time and for any reason.

While employed with Defendants, Plaintiff received a negative performance evaluation, had her pay docked several times for unexcused absences and tardiness, and received numerous verbal and written reprimands for failure to comply with the Township's policies or procedures. On June 14, 2004, Plaintiff was given a negative performance evaluation, receiving below average ratings for attendance and punctuation, quality and quantity of work, and a poor rating for alertness and comprehension, job knowledge, and rate of errors. On February 25 and 28, 2005, Plaintiff received a verbal and written warning for failing to follow office procedures or policies pertaining to appeal hearings. On March 18,

2005, Plaintiff received a written reprimand for violating office policies or procedures and was notified that "[a]ppropriate disciplinary action which may include suspension up to and including termination" could result if the incident reoccurred. Defs.' Mot. Summ. J. Ex. T-15. On September 22, 2005, Plaintiff received a written reprimand for allowing an applicant, who was not a resident of Calumet Township, to sign in.

On February 27, 2006, Defendants adopted a policy prohibiting political activity during work hours. In particular, the policy provides that "political activity of any kind is strictly prohibited during your hours of work as a Calumet Township employee." Defs.' Mot. Summ. J. Ex. T-31. The policy further includes a prohibition against the use of "any township means of transmission or reception, equipment to produce or reproduce any matter, or divulging confidential matter for political use" and provides that "[v]iolation of any part of these strictures will lead to disciplinary action, possibly including termination." *Id.* Plaintiff received a copy of the Defendants' policy against political activity on March 2, 2006.

In March 2006, Plaintiff was assigned to the Quality Control Investigation Department in the Township's Main Office. According to Defendants, on March 21, 2006, while Plaintiff was working in the Quality Control Investigation Department, and during work hours, she approached a co-worker, Alice Beard, and attempted to persuade or recruit her to support Kyle Allen, a candidate opposing Mary Elgin for the office of Township Trustee in the May 2006 Democratic primary election. According to Defendants, following the incident, Ms. Beard later contacted the Personnel Department to report Plaintiff's conduct and spoke with Mary Elgin and Donna Frazier, the Chief Deputy of the Township Trustee's Office. After hearing Ms. Beard's complaint, Ms. Elgin instructed her to put the statement in writing.[1]

---

[1] According to Ms. Beard, Plaintiff approached her "with very graphic statements about . . . Mary Elgin. She told me to join in and vote for Kyle Allen and I would have a job . . . the trustee was NO GOOD. She hated her.

3

Further, according to Defendants, in mid-March 2006, during work hours, Plaintiff had a conversation with another co-worker, Jacqueline Davison, during which Plaintiff seemed upset, and after being asked what was wrong, told Ms. Davison that it is just political and things are going to change. Plaintiff then walked away. On about March 20, 2006, according to Defendants, during work hours, Plaintiff spoke with Ms. Davison again and told her that she did not like the way the office was being handled and that there were going to be changes when the new administration came into office. According to Defendants, Plaintiff then assured Ms. Davison that when the new administration came into office, Ms. Davison would still have a job with the Township. Further, according to Defendants, on March 22, 2006, Plaintiff spoke with Ms. Davison, during work hours, and told her that Elgin was not running the office the way Plaintiff had told her to run it and that things will change.

Following the incident, on March 27, 2006, Ms. Davison reported what allegedly occurred to Ethel Shelton, Ms. Elgin's Executive Secretary, and Ms. Frazier. Ms. Davison first attempted to speak with Ms. Elgin, but was unable to see her and Ms. Shelton instructed her to put her statement in writing. Later, Ms. Davison spoke with Ms. Frazier and gave her the written statement.

On March 31, 2006, Ms. Frazier issued Plaintiff a letter of termination notifying her that she was being terminated for violating Defendants' policies outlining political activities. The letter referenced the written statements from Ms. Beard and Ms. Davison and outlined Plaintiff's inappropriate behavior. Attached to the letter of termination were the written statements by Ms. Davison and Ms. Beard. Aside from the violation of the policy against political affiliation, the letter of termination did not indicate any other reason for the termination.

---

She stated [that] Trustee Elgin will lose this election for sure and that she swears by these words." Defs.' Mot. Summ. J. Ex. T-34. Although it is unclear from the record whether Ms. Beard is the person who typed the letter to Elgin, Ms. Beard signed the letter and, at Ms. Beard's August 8, 2008 deposition, she testified that the information contained in the letter was the information that she communicated to Ms. Elgin and Ms. Frazier. Pl.'s Resp. Br. App. 9.

# SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery*

*Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

### A. Claims Brought Under § 1983

Section 1983 of Title 42 of the United States Code guarantees:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

6

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . ."

To succeed on a claim brought under § 1983, the plaintiff must allege that the injurious acts were performed "under color of state law," and that the injurious acts deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *Bayview-Lofberg's Inc. v. City of Milwaukee*, 905 F.2d 142, 144 (7th Cir. 1990).

*1. First Amendment Claim*

As a preliminary matter, in Defendants' brief in support of summary judgment, Defendants argue that they are entitled to summary judgment because Plaintiff's speech was not constitutionally protected. However, Plaintiff argues that this is not a political speech case, but rather, Plaintiff contends that her First Amendment rights were violated because her termination was politically motivated by her political affiliation and beliefs. On the face of Plaintiff's Complaint, she alleges that her First Amendment rights were violated as Defendant Elgin allegedly terminated her for political reasons because she did not support Defendant Elgin's re-election and supported her political opposition. Based on the face of Plaintiff's Complaint, the Court finds that Plaintiff is proceeding with a claim that her First Amendment rights were violated on the basis of political affiliation, not protected political speech.

The First Amendment protects public employees from suffering adverse job actions because of their political associations and beliefs. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 71 (1990); *Elrod v. Burns*, 427 U.S. 347, 359 (1976). It is well established constitutional law that "hiring, firing, or transferring" government employees because of political motivation is a violation of the First Amendment, except when the employee is in a policymaking position or in a confidential relationship with a superior. *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). To establish a prima facie case of politically motivated discharge, the employee must prove that her conduct was constitutionally protected and was a substantial or motivating factor in the employment decision. *Id.* Once the employee has

established a prima facie case, the "burden shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the employment decision." *Id.*

As a preliminary matter, Defendants do not argue that Plaintiff was in a policymaking position or in a confidential relationship with a superior and nothing in Plaintiff's job duties[2] at the time of her termination indicates that she falls under the policymaking exception. *See Foster v. DeLuca*, No. 04 C 5850, 2006 WL 1980197, *5 (N.D. Ill. July 7, 2006) (finding that where there was nothing inherently political about the plaintiff's job, the policymaking exception did not apply). Accordingly, the policymaking employee exception does not apply.

Turning to Plaintiff's prima facie case, Plaintiff's political beliefs and associations (supporting candidate Kyle Allen against Ms. Elgin's administration) is constitutionally protected activity. *Nelms v. Modisett*, 153 F.3d 815, 819 (7th Cir. 1998). Courts in the Seventh Circuit have protected the rights of public employees to either support, or refuse to support, a political candidate of their own choice. *See De Mauro v. Loren-Maltese*, No. 98 C 8318, 2000 WL 116079, *5 (N.D. Ill. Jan. 24, 2000); *Biddle v. City of Fort Wayne*, 591 F. Supp. 72, 85 (N.D. Ind. 1984) (finding that the plaintiff's endorsement of a candidate who opposed the incumbent mayor was protected activity under the First Amendment).

To prove that Defendants were motivated by Plaintiff's political association, Plaintiff must first prove that Defendants actually knew about her support for Kyle Allen, in opposition to Ms. Elgin. *See Hall*, 389 F.3d at 762. Here, the evidence supports that Ms. Elgin and Ms. Frazier indeed knew of Plaintiff's affiliation with Kyle Allen at the time of Plaintiff's termination. Prior to terminating Plaintiff, Ms. Elgin and Ms. Frazier received complaints from Ms. Beard and Ms. Davison, outlining Plaintiff's alleged conduct in violation of the policy against political activity. Further, after hearing both complaints, Ms. Elgin instructed the Defendants–both in person and through Ms. Shelton–to put their

---

[2] At the time of Plaintiff's termination, she was primarily responsible for performing clerical duties, such as processing paperwork from applicants for Township assistance.

complaints in writing. The written statement from Ms. Beard specifically provides that Plaintiff allegedly asked her to "join in and vote for Kyle Allen," and Ms. Davison's statement specifically provides that Plaintiff allegedly "said she was going to campaign for the other candidate so Ms. Elgin would lose." Pl.'s Resp. Br. App. 2-3. Based on the statements by Ms. Beard and Ms. Davison, Ms. Frazier and Ms. Elgin decided to terminate Plaintiff. The two letters were then attached to Plaintiff's termination letter. Accordingly, Plaintiff can prove that the Defendants knew of her affiliation with Kyle Allen, in opposition to Ms. Elgin, when she was terminated.

Nonetheless, Defendants argue that Ms. Elgin was not motivated by Plaintiff's political association as Ms. Elgin did not concentrate on whether Plaintiff's statements were for or against Ms. Elgin, but rather, just focused on the fact that Plaintiff allegedly violated the policy against political activity in the workplace. In response, Plaintiff argues that Defendants' argument cannot be true because Ms. Elgin engaged in political activity in the workplace, as did other members of management. Therefore, according to Plaintiff, she was actually terminated because she did not support Ms. Elgin.

Yet, Plaintiff has failed to provide any evidence in support of her position. Plaintiff has failed to show that Ms. Elgin was aware that others were allegedly engaging in political activity in the workplace or, like Plaintiff's alleged conduct, that such activity was reported to her. Plaintiff argues that Ms. Elgin knew that she was a community activist, knew that she had political connections, wanted Plaintiff's support, did not want Plaintiff to support another candidate, and terminated her because she thought Plaintiff was going to use her connections against her. Yet, the deposition testimony that Plaintiff relies on in support of these allegations provides no support for her. While Ms. Elgin's July 10, 2008 deposition testimony supports that she knew about Plaintiff's connections and that she was a

political activist,[3] the deposition testimony does not support that Ms. Elgin wanted Plaintiff's support or that she thought Plaintiff would use her connections against Ms. Elgin.

Further, with regard to other political activity going on in the workplace, Plaintiff relies on the September 26, 2008 deposition testimony of Gary McDaniel, one of Plaintiff's co-workers. In particular, Mr. McDaniel alleges that employees purchased tickets to political events during work hours, at the workplace, and used the copier to make copies of the money they used to verify that they paid for the tickets, which would violate Defendants' policy against using Township equipment for political activities. Yet, Mr. McDaniel specifically stated that this alleged activity was not reported and there is no indication that, unlike Plaintiff's conduct, Ms. Elgin knew of this activity. Additionally, relying on the August 8, 2008 deposition testimony of Alice Beard, Plaintiff alleges that tickets for political events were distributed to employees during work hours at staff meetings. However, in reviewing Ms. Beard's August 8, 2008 deposition testimony, the Court notes that Plaintiff mischaracterizes Ms. Beard's testimony as Ms. Beard explicitly testified that the staff meetings occurred after work.

Accordingly, Plaintiff has failed to provide any evidence supporting her arguments that her political affiliation was a motivating factor in her termination and fails to establish a genuine issue of material fact as to whether she was terminated because of her political affiliation.

Plaintiff further denies that she made any political statements or engaged in any political activity while on the job, and, thus, Plaintiff argues that this creates a genuine issue of material fact.[4] Whether

---

[3] While the deposition testimony overall does support that Ms. Elgin knew Plaintiff was a community activist, the exact testimony that Plaintiff cites actually provides that Ms. Elgin knew that Jean Moss, not Plaintiff, was a community activist.

[4] In support of this assertion, Plaintiff cites her own deposition testimony, but, except for one page, has failed to provide the Court with the portions of the transcript that she relies on. Plaintiff also asserts that "Defendants' witnesses testified that no one in the Trustee's office talked about politics or engaged in political activity in the office, except Mrs. Taneff, and she only once," but has failed to provide the Court with the portions of the deposition testimony that she relies on for this assertion. Pl.'s Resp. Br. 2. Accordingly, the Court relies only on the evidence that has been provided to it.

Plaintiff made the statements that Defendants allege is material to whether she violated the policy against political activity in the workplace. Plaintiff's denial of making such statements or engaging in political activity in the workplace creates a genuine issue of fact, but not material fact. Given that Plaintiff alleges that she was terminated because she opposed Ms. Elgin and supported a rival candidate, whether or not Plaintiff made the statements, does not have any bearing on whether Defendants terminated her because of her political beliefs or affiliation. Whether Plaintiff made the alleged statements is immaterial as to whether Defendants were motivated by her political affiliation when they decided to terminate her. Accordingly, Plaintiff's denial of making any political statements or engaging in any political activity while on the job does not create a genuine issue of *material* fact as to whether she was terminated because of her political affiliation.

Further, even if Plaintiff could establish a prima facie case of politically motivated termination, Defendants could escape liability by establishing a legitimate, non-political reason for Plaintiff's termination. *Nelms v. Modisett*, 153 F.3d 815, 820 (7th Cir. 1998). Plaintiff could have been fired for a good reason or no reason at all, as long as she was not fired for her constitutionally protected activities. *Garrett v. Barnes*, 961 F.2d 629, 633 (7th Cir. 1992). Defendants argue that Plaintiff was discharged not only for her violation of the policy against political activity in the workplace, but also because of her unsatisfactory work history. By contrast, Plaintiff argues that Defendants' offered reason is pretextual, as the termination letter only states that she was terminated for violations of the policy against political activity and did not provide any other reason.

While Plaintiff is correct that the termination letter only states that the reason for Plaintiff's termination was her alleged violation of the policy, the exhibits provided by the parties support that Ms. Frazier reviewed Plaintiff's personnel file before deciding to recommend her termination and, based on Plaintiff's unsatisfactory work history, decided that the violation of the policy against political activity

in the workplace warranted termination. *See* Defs.' Mot. Summ. J. Ex. T-47 at 81; Pl.'s Resp. Br. App. 23.

In response, Plaintiff claims that there is an inconsistency between Ms. Frazier's testimony at the June 7, 2006 Unemployment Hearing and her testimony at her August 20, 2008 deposition. In particular, Plaintiff alleges that at the Unemployment Hearing, Ms. Frazier testified about reviewing Plaintiff's personnel file, but at the later deposition, Ms. Frazier "apparently forgot about reviewing [Plaintiff's] file, but now recalled a comment by Shirley Payne when Payne was [Plaintiff's] supervisor damaging to [Plaintiff]." Pl.'s Resp. Br. 4. However, Plaintiff has failed to point out any such inconsistency in Ms. Frazier's testimony. In fact, the deposition testimony that Plaintiff relies on actually supports Defendants' position that Ms. Frazier reviewed Plaintiff's file before deciding to recommend termination. At the August 20, 2008 deposition, Ms. Frazier testified that she looked in Plaintiff's file and "based on . . . some previous reprimands, based on . . . our policy . . . [she] made the recommendation that [Plaintiff] be terminated." Pl.'s Resp. Br. App. 23. This testimony is consistent with Ms. Frazier's previous testimony at the Unemployment Hearing concerning reviewing Plaintiff's personnel file and Ms. Frazier's subsequent August 28, 2008 deposition when she also testified about reviewing Plaintiff's file.

The supporting exhibits provided by Defendants show that Plaintiff had previously received a poor performance evaluation, had numerous reprimands, and had her pay docked for tardiness and unexcused absences. Defendants' decision to terminate Plaintiff after reviewing her personnel file containing all of this information would provide Defendants with a legitimate, non-political basis for terminating Plaintiff's employment. *See Kasak v. Village of Bedford Park*, 563 F. Supp. 2d 864, 880 (N.D. Ill. 2008) (finding that the plaintiff's failure to follow the employer's procedures provided a legitimate, non-political reason for plaintiff's termination). Plaintiff has failed to contradict these

reasons. Accordingly, even if Plaintiff were able to establish her prima facie case, Defendants have provided a legitimate, non-political reason for Plaintiff's termination.

Therefore, no genuine issue of material fact exists as to whether Plaintiff's termination was politically motivated in violation of the First Amendment and Defendants' Motion for Summary Judgment must be granted as to Plaintiff's First Amendment claim.

*2. Fourteenth Amendment Claim*

Plaintiff's Complaint also alleges, with no substantiation or explanation, that her discharge violated the Fourteenth Amendment. The Court presumes that Plaintiff alleges a violation under the Due Process Clause. However, to have a due process claim in the employment context, Plaintiff must show that she has a constitutionally protected property interest, was deprived of that interest, and that the deprivation occurred without due process of law. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 360 (7th Cir. 2005). Property interests are created by state law and state law explicitly gives Elgin, as the executive of Calumet Township, the authority to hire and fire Township employees. *See Allen v. Elgin*, No. 2:04-CV-001 PS, 2006 WL 3314557, *10 (N.D. Ind. Nov. 9, 2006) (citing Ind.Code § 36-6-7-2). Plaintiff offers no authority supporting an assertion of a property interest in her employment with Calumet Township, and therefore, Defendants' Motion for Summary Judgment must be granted as to Plaintiff's Fourteenth Amendment claim.

*3. Qualified Immunity*

Defendants contend that even if there was a violation of Plaintiff's constitutional rights, Ms. Elgin is shielded from civil liability. Government officials performing discretionary functions are protected from liability by qualified immunity. *Leaf v. Shelnutt*, 400 F.3d 1070, 1079 (7th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)). The qualified immunity inquiry is two-fold. First, a court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Crull*

*v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, the court must determine if the right was clearly established at the time of the violation. *Id.*

Given that the Court has found that Plaintiff has suffered no constitutional injury, "it is unnecessary to consider whether [Ms. Elgin is] entitled to qualified immunity." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 n. 4 (7th Cir. 1995). However, even if Plaintiff was able to establish a constitutional injury, she failed to address the issue of qualified immunity in her Response brief and, thus, she has waived any argument that the defense does not apply. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of N. Amer. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived).

*4. Punitive Damages*

In her Complaint, Plaintiff demands punitive damages as to all Defendants. Given that Plaintiff's § 1983 claim fails, the Court need not address the issue of punitive damages. However, even if Plaintiff could establish a claim under § 1983, Plaintiff would still not be entitled to punitive damages.

Defendants argue that the Township, as a municipal entity, is immune from punitive damages under § 1983. As to Ms. Elgin in her official capacity, an "official capacity suit is tantamount to a claim against the government entity itself." *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). To that end, a "municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). As to Ms. Elgin in her individual capacity, the Supreme Court has stated that punitive damages may be assessed against public officials being sued in their individual capacity when the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). However, like the issue of qualified immunity, Plaintiff has failed to address the issue of punitive damages in her Response brief to Defendants' Motion for Summary

14

Judgment and, therefore, any such relief has been waived. *See Palmer*, 327 F.3d at 597; *Laborers Int'l Union of N. Amer.*, 197 F.3d at 1197.

### B. Objections to the Admissibility of Plaintiff's Rule 56 Evidence

Defendants filed their Objections to the Admissibility of Plaintiff's Rule 56 Evidence, seeking to exclude certain evidence offered by Plaintiff in response to Defendants' Motion for Summary Judgment. In particular, Defendants argue that certain "evidence" (most of which actually are nothing more than arguments made by Plaintiff's counsel in response to Defendants' Motion for Summary Judgment, rather than purported facts) is inadmissible as irrelevant, lacking identification or authentication, constituting speculation or conjecture, premised on conclusory allegations, impermissible statements of counsel, without personal knowledge and competency, and/or premised on an impermissible promise of additional testimony. Additionally, Defendants request an award of attorney fees and reimbursable expenses pursuant to Federal Rule of Civil Procedure 11.[5] The Court construes the Objections as a Motion to Strike.

Given that the Court has already determined that Plaintiff is unable to establish a prima facie case of politically motivated termination on the record as a whole, even if the evidence sought to be excluded were considered by the Court, summary judgment is still warranted. Accordingly, the Objections to Admissibility of Plaintiff's Rule 56 Evidence, construed as a motion, is denied as moot. *See Duwar v. Pabey*, 2:06-cv-101, 2007 WL 2076034, *9 (N.D. Ind. 2007) (where a plaintiff failed to establish a prima facie case of politically motivated termination and, even if the statements sought to be struck were considered by the court, summary judgment would still be warranted, the motion to strike was denied as moot).

---

[5] To the extent that Defendants seek attorney fees and reimbursable expenses pursuant to Rule 11, the Court notes that they have failed to comply with Rule 11(c)(2)'s notice and service requirements.

**CONCLUSION**

Accordingly, based on the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment [DE 43] and **DENIES as moot** Defendants' Objections to Plaintiff's Rule 56 Evidence [DE 56]. Summary judgment is hereby **ORDERED** in favor of Defendants Calumet Township and Mary L. Elgin, against Plaintiff Velia Taneff. Plaintiff Velia Taneff shall take nothing by her Complaint in this case against Defendants Calumet Township and Mary L. Elgin.

The Jury Trial setting, the Final Pre-Trial Conference setting, and all previously established dates and deadlines in this case are hereby **VACATED**.

SO ORDERED this 29th day of December, 2008.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT

cc: All counsel of record